Gibson *v.* Blowers Paint Service et al., Appellants.
Gibson, Appellant, *v.* Boy Scouts of America et al.

Argued April 8 and 9, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Karl E. Weise,* for appellants, No. 61.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellant, No. 67 and for appellee, No. 61.

*William A. Challener, Jr.,* with him *William A. Challener,* for appellees, No. 67.

Opinion by Keller, P. J., June 24, 1940:

The claimant's husband, Walter D. Gibson, was employed by Blower's Paint Service, the trade name of William D. Blower, who carried on the business of painting and decorating at 3058 West Liberty Avenue, Dormont, Allegheny County, Pennsylvania. In connection with his business—which was limited to Allegheny County, Pennsylvania, and vicinity—he owned and used two trucks. Gibson had general charge of these trucks and drove one of them, and was in charge of the shop, which was located about a block and a half away in the rear of West Liberty Avenue. His hours of employment were indefinite and he was paid a flat salary of $20 a week.

Gibson for several years had been interested in the Boy Scout movement and was scout master for Troop No. 193 of the Boy Scouts of America, which troop was

sponsored by about four hundred members of the Men's Bible Class of Mt. Lebanon United Presbyterian Church. He received no salary or compensation as scout master, but, on the contrary, paid dues of one dollar a year.

Some time prior to July 26, 1937, the troop committee, of which Gibson was a member, made plans to take Scout Troop No. 193 on their annual two weeks' camping trip, the place chosen being on Clear Lake about fifty miles from Kingston, Ontario, Canada. Permission for the trip was obtained from the Allegheny County Council West, which seems to have had some supervision over all troops in that county chartered by the national organization of Boy Scouts of America.

Gibson, representing the troop committee, asked Mr. Blower for permission to use the truck which he usually drove, to transport the equipment belonging to Boy Scout Troop 193 to the camp grounds in Canada, which was given. The equipment consisted of two large tents, six small tents, cooking utensils, axes, stoves, grills and other camping needs, and some food, and it was to be used for the shelter, board, lodging and convenience of the troop during their stay at camp. The scout master would be furnished lodging and board while in camp.

On Friday, July 23, 1937, Gibson worked at his regular employment all morning. He stopped work some time between 12:00 noon and 2:00 P. M., changed from his work clothes to his scout outfit, (khaki trousers, scout shirt and scout hat) and left the employer's store room, with instructions from the employer to be back by six o'clock Tuesday morning—his only instructions. The employer exercised no control whatever over the truck as to the journey, the route or the destination. Gibson drove the truck containing the scout camping equipment to the camp site in Canada, arriving there on July 24. He stayed there until the morning of Monday, July 26, when he started back with the truck, and while near Brewer's Mills, Ontario, he met with an automobile collision, in which he was seriously injured. He

was removed to the Kingston Hospital, where he died July 29, 1937, as a result of the injuries so received.

His widow filed claims for compensation against (1) Blower's Paint Service and (2) Allegheny County Council West, Boy Scouts of America. She was awarded compensation by the referee against the former, and was denied it as to the latter. This action was approved, in both respects, by the Workmen's Compensation Board and, on appeal, by the court of common pleas.

Blower's Paint Service and its insurance carrier, which was made a party defendant, appealed to this court from the judgment entered on the award against them (No. 61). The claimant, by way of precaution, appealed from the action of the court refusing to enter judgment against Allegheny County Council West and its insurance carrier (No. 67). We will consider the appeals in that order.

### No. 61

At the outset we feel it necessary to say that the court of common pleas on appeal from the Workmen's Compensation Board has no authority to make *any* findings of fact enlarging or supplementing those found by the compensation authorities. Its only function is to determine whether there is substantial competent evidence to sustain the board's findings and, if so, whether those findings justify the action of the board. We shall therefore confine our discussion on this feature of the case to the findings of the referee and their affirmance by the board.

There was no finding by the referee that the employer, Blower, ordered or directed or even requested Gibson to drive his truck to the Boy Scout Camp in Canada; and there is no competent evidence in the record which would support any such finding if it had been made by the referee or board. The evidence goes no further, on this point, than to sustain the finding of the referee, affirmed by the board, "that Walter D.

Gibson, deceased, was employed as a truck driver and handyman by William D. Blower, operating as Blower's Paint Service. Walter D. Gibson was also scout master for Troop 193 of the Boy Scouts of America, ...... Plans had been made to take the Scout Troop on their annual camping trip near Kingston, Canada. The deceased had requested of Mr. Blower the use of his truck to transport the Boy Scout equipment, to which request Mr. Blower had acceded."

It clearly appears from the undisputed evidence that Blower had no business dealings or operations in Canada, which called for or required the use of his truck there; that, on the other hand, Gibson, by reason of his interest in and connection with the Boy Scouts, asked Blower's permission to use the truck for purposes useful and advantageous to the Boy Scouts, but having no relation whatever to his employer's business; that Blower acceded to Gibson's request and allowed him to transport the scout equipment to the site of the camp, and generously allowed him to continue to draw his pay while away on his Boy Scout activity. That he may have been influenced in giving his consent, by the thought that he might get some favorable publicity from it,[1] may have detracted somewhat from the generosity of his action, but it did not convert his compliance with Gibson's request into an order, direction or request that he should use the truck for the hauling of the troop's camp equipment. The vital distinction between the two was pointed out by us in *Smedley v. Frank & Seder,* 116 Pa. Superior Ct. 270, 272, 176 A. 783, where an employer was held liable for payment of compensation to the widow of its truck driver, who had been

---

[1] See referee's fifth finding of fact: "It appears from the testimony that William D. Blower, the owner of Blower's Paint Service, *permitted the use* of his truck only after considerable deliberation as to the good will and advertising to be derived from this *courtesy* extended to the Boy Scout Troop Number 193." (Italics supplied).

*ordered* to use the employer's truck to haul the goods of a fellow employee—the store detective—from Philadelphia to his new residence in Camden, N. J., and had been killed in a collision with a trolley car on his way back. We said, inter alia, "The hauling was done, not by *permission* of the defendant's superintendent, but by his *directions*. The superintendent of a store would, ordinarily, have authority to give such directions, and the employee would be required to obey. The evidence does not support a finding that the truck driver was lent to Uber, but rather that the superintendent, the man in authority, gave orders that the goods should be hauled. We cannot say that it was not to the interest of the employer and in furtherance of its business that its employee's goods should be promptly and safely carried and delivered to his new place of residence. Employers may properly do many acts of courtesy and service for their employees, and another employee, while doing them pursuant to directions, is not outside the scope of employment if they are *ordered* to be done, as distinguished from *permitted* to be done."

This was in accord with the ruling of the Supreme Court in *Messer v. Mfrs. Light & Heat Co.*, 263 Pa. 5, 106 A. 85, where that court reversed the court below and sustained an award by the compensation board, because the employee, during his vacation period, had been *requested by the superintendent* of the defendant company employer to take his automobile and go to the Brave Pump Station, about eighteen miles distant, to inspect the station, in order to increase his efficiency as an employee (p. 6), and he was killed by an accident on his way there. The Supreme Court said, speaking through Mr. Justice Fox: "The test to be applied is, did he go upon this mission voluntarily or because of the request of his superintendent. The referee finds that he went not only at the request of the superintendent, but in pursuance of the policy which the company followed with all its employees. He was therefore prac-

tically under orders and in the performance of his duty when he was injured" (p. 9).

It was also in harmony with our decision in *Spizzirri v. Krouse,* 73 Pa. Superior Ct. 476, 478, 480, 481, where the defendant being required to remove her automobile business from premises rented by her, had employed the claimant and two or three other laborers to clear up the premises and put them in proper condition, in the course of which a pile of junk had been collected. The claimant and his fellow workmen asked the defendant for this junk and the defendant told them they could have it. Then one of them asked for permission to use defendant's truck to haul it away and she said they could have it for that purpose. She did not know where they were going to take the junk or exercise any control over its hauling or disposition. Claimant was hurt in a collision while on the journey and we held there could be no recovery against the employer, notwithstanding it was to her interest to have the junk removed from her premises.

In every case relied on by the appellee [2] or the court

---

[2] *Webb v. North Side Amusement Co.,* 298 Pa. 58, 60, 147 A. 846—where the employer was driving the *general manager of his employer* back to Pittsburgh; *Bridge v. Lomax,* 69 Pa. Superior Ct. 109—where as claimant "was leaving for her lunch about noon she was directed by H. L. Lomax [manager of defendant employer] to purchase his lunch for him, and to bring it back with her when she returned from her lunch" (p. 111); *Howell v. Kingston Twp. School Dist.* 106 Pa. Superior Ct. 89, 91, 161 A. 559—"He [claimant's husband] was on a specific mission of the school board, and *instructed and directed* by the board to take up the matter of the tuition of the particular wards of Mrs. Elston with the State Department of Education" (p. 94); *Kelly v. Ochiltree Electric Co.,* 125 Pa. Superior Ct. 161, 163, 164, 190 A. 166—"Mr. Kelly was notified [by Ochiltree Electric Company] of the time and place of meeting ...... and was *instructed* to be present at this place at the time fixed ...... All arrangements for the trip ...... were made by that Company" (p. 164); *Baumann v. Ehmke Co.,* 126 Pa. Superior Ct. 108, 110, 190 A. 343—where

below, in which a claim for compensation was allowed for injuries received while the employee was away from the employer's premises and on affairs not connected with the employer's business, the employer, or his duly authorized representative, had ordered, directed or requested the employee to perform the work or take the trip; in not one of them had he merely acceded to the employee's request for permission to do so.

The fact that the employer also generously allowed his employee to use the gasoline in the truck tank, instead of purchasing the entire supply is of no moment. There is no evidence in the record which would sustain a finding that Gibson while on his way to and from the Boy Scout camp, hauling its camping equipment, was in the course of his employment with Blower, or that in hauling the camp equipment to the Boy Scouts camp, he was actually engaged in the furtherance of the busi-

---

claimant was a traveling salemann for defendant, and "Pursuant to the *instructions* of his employer, he left ...... for the purpose of making an extended trip ...... and was specially advised to visit one J. H. Hibbs" (p. 110); *Boyd v. Philmont Country Club,* 129 Pa. Superior Ct. 135, 195 A. 156—where claimant was a regular caddy employed by defendant country club, and was hurt while caddying for a member of the club, when he complied with the *request* of the club member, for whom he had been assigned to caddy by defendant and went to obtain for her some flowers in the adjoining woods along the fairways" (p. 141); *Barclay-Westmoreland Trust Co. v. Latrobe Borough,* 131 Pa. Superior Ct. 513, 200 A. 271,—where the chief of the volunteer fire department *directed* Huber, the father of the minor claimants, and some other firemen to go to the rescue of certain people imperilled by a flood (p. 514); *Miller v. Keystone Appliance Co.,* 133 Pa. Superior Ct. 354, 2 A. 2d 508—"Here deceased was enroute to his home from a place to which he had gone to carry out what was, in effect, a *special message or errand for his employer*" (p. 358). See also, to same effect, *Haddock v. Edgewater Steel Co.,* 263 Pa. 120, 123, 106 A. 196; *Matis v. Schaeffer,* 270 Pa. 141, 143, 113 A. 64; *Krapf v. Arthur,* 95 Pa. Superior Ct. 468, affirmed 297 Pa. 304, 146 A. 894; *Marletter v. Oscar's Cafe,* 293 Pa. 509, 510, 143 A. 216; *Keasey v. Mitzel Bros.,* 135 Pa. Superior Ct. 460, 5 A. 2d 631.

ness or affairs of his employer, Blower's Paint Service. A return of the case to the board would do the claimant no benefit, in view of the basic testimony now in the record, produced by witnesses called by her, that her husband *asked permission* of his employer to use the truck on Boy Scout affairs and the *employer acceded to his request (Anderson v. Baxter,* 285 Pa. 443, 449, 132 A. 358; *McGrath v. Herzog,* 126 Pa. Superior Ct. 229, 190 A. 550).

The appellee's suggestion as to the rule in trespass actions, holding that a prima facie case for the jury is ordinarily made out where plaintiff shows that the defendant's name and business appeared on the vehicle involved in the accident does not apply where it appears from the plaintiff's own case that the truck or vehicle was not being used at the time of the accident on the employer's business: *Felski v. Zeidman,* 281 Pa. 419, 421, 126 A. 794; *Hartig v. American Ice Co.,* 290 Pa. 21, 29, 31, 137 A. 867.

### No. 67.

Coming then to Appeal No. 67, the evidence in the record sustains the following findings of the referee, affirmed by the board:

"Fourth: That the deceased, as Scout Master of Troop 193, Boy Scouts of America, Allegheny County Council West, was paid no salary, except that maintenance on this trip was provided for out of the monies paid by the members of the Scout Troop, each Scout contributing $8 to the general fund to cover the expenses of the camping trip.

"Sixth: From a consideration of all the testimony in the case, your Referee finds as a fact that the deceased, Walter D. Gibson, as Scout Master of Troop 193, was not an employee of the Boy Scouts of America, Allegheny County Council West, the duties of the Scout Master not being regular employment and considered gratuitous."

The testimony is clear that the relationship between

Gibson and the defendant in this appeal was not that of master and servant within the intendment of the Workmen's Compensation Law. The position of scout master was not an employment, but a voluntary office gratuitously filled by Gibson as an expression of his philanthropic interest in boys; and the relation between Troop No. 193, of which he was scout master, and the Allegheny County Council West was not such as to make him an employee of the latter, within the coverage of its workmen's compensation policy, which was confined to its paid employees, and did not include troop scout masters. If there is any doubt on that score, the matter may, on proper request, be referred back to the board solely to examine the policy and the pay rolls on which the premiums were based, and see if the policy specifically covered troop scout masters, as was done with respect to ministers in *Crain v. Free Methodist Church,* 115 Pa. Superior Ct. 250, 175 A. 298 (see same case, 123 Pa. Superior Ct. 606, 187 A. 926) ; but the testimony now in the record seems almost conclusive on this point. It shows that the national organization, Boy Scouts of America, generally known as the National Council, is chartered by Congress; that Allegheny County Council West is a local council incorporated under the laws of Pennsylvania; that the Men's Bible Class of Mt. Lebanon United Presbyterian Church applied to the National Council for a charter for a troop, which was approved by the defendant local council, and was granted by the National Council, as Troop No. 193; that the Troop Committee of the Bible Class appointed Gibson, scout master, which was approved by the defendant local council, and a commission as such was issued to him by the National Council; that the defendant council did not appoint him, nor could it dismiss him—the troop committee alone could do that; that his services as scout master were given free, and he received no pay, wages or valuable consideration from the defendant Council for acting as scout master of

Troop 193, and he was not employed by the defendant council at the time of the accident.

There are many other supporting circumstances in the testimony, not necessary to be recited here, which sustain the action of the referee and the board in this respect.

The court below seemed to be of the opinion that somebody *must* pay compensation because of Gibson's death, but, while it may be regrettable, that conclusion does not follow. Unless the decedent, while operating the truck at the time of the accident, was a servant or employee of a master or employer—within the intendment of the Workmen's Compensation Law—and was using the truck in the course of his employer's business, or, by the employer's order, direction or request was actually engaged in the *furtherance of the employer's business or affairs,* his wife and family are not entitled to compensation. We cannot take money from one person and give it to another, just because there was an accident resulting in death. If claimant's husband was killed while voluntarily devoting his time and energy to the philanthropic activity in which, as an individual, he was specially interested, it is a regrettable circumstance, but it carries with it no right to compensation from others—just as a Sunday School teacher, teaching a class of boys, without thought of pay or compensation, who is hurt while going to or from a Sunday School picnic in a truck, owned by his business employer, permission to use which, for hauling picnic equipment, had been given him at his request, by his employer, cannot get compensation from his employer or from the Sunday School (even though it may carry workmen's compensation covering its paid employees), for the injury resulting from the accident; for as respecting it, he does not come within the provisions of the Workmen's Compensation Law as to either of them.

No. 61—April Term, 1940. The judgment is reversed and is now entered for the defendant.

No. 67—April Term, 1940. The judgment is affirmed.