181 P.2d 624

**GOODYEAR AIRCRAFT CORPORATION, ARIZONA DIVISION, v. GILBERT et al.**

No. 4951.

Supreme Court of Arizona.

May 26, 1947.

Moore, Romley & Roca, of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix (John R. Franks, of Phoenix, of counsel), for respondent Industrial Commission.

Minne & Sorenson, Charles N. Ronan, William H. Burrus and Kenneth C. Chatwin, all of Phoenix, for respondent Phillip Lindsay.

UDALL, Judge.

For more than three years prior to the injury in question Phillip Lindsay (hereinafter referred to as the claimant) had been an employee of the Goodyear Aircraft Corporation, Arizona Division. This corporation (petitioner, herein referred to as the employer) carried workmen's compensation insurance with the State Fund administered by the Industrial Commission of Arizona. During the war period the employer was operating under a cost plus a fixed fee contract with the Bureau of Aeronautics of the United States Navy engaged in the modification of naval aircraft flown to its plant near Phoenix. Under its contract the employer was required to keep on hand at all times a constant minimum labor force of from 900 to 1300 men, notwithstanding that by reason of unpredictable delays on the part of the Navy Department, many of the employer's

modification workers from time to time were not actually engaged in any productive work for the benefit of either the employer or the United States. These idle time periods materially increased after V-J Day. The workers, however, were paid for idle time and, in turn, the employer received reimbursement from the government according to the terms of its contract.

When the claimant reported for work with the swing shift at 3:30 P.M. on November 15, 1945, his foreman advised his crew that due to the delay in the arrival of a ship there would be no work to be done for some five hours. During this idle time period the claimant, on his own account, undertook the manufacture of a souvenir in the form of a cigarette lighter, using for that purpose a supposedly discharged 50-caliber machine gun shell which he had gotten from a scrap box in the modification building. None of his duties bore any relationship to such machine gun shells which were the property of the United States. In order to fabricate the shell into a lighter, Lindsay retired alone into the hydraulic room and there used a hand drill and vise which were the property of the employer and which he was authorized to use in connection with his usual modification duties. Unfortunately, this shell contained a live cap which, in the operation, exploded causing an injury to claimant's left eye. The accident occurred at about 6:40 P.M.

Notwithstanding the employer's rules against the use of idle time for the fabrication of personal souvenirs, it was a fairly widespread practice among modification workers to use company machines during their idle time for the making of such gadgets. The Commission found that such rules were honored primarily by their violation and that said violation was with the knowledge of agents and supervisory employees of the Company. There is ample testimony in the record (though conflicting) to support such finding. We shall discuss later the claimant's own knowledge of these rules.

Following the accident Lindsay applied for compensation and after a hearing thereon the Commission denied him an award, finding that at the time of the injury the employee was engaged in an occupation expressly prohibited by his employer and that the employer was not legally responsible for the injury. After several rehearings and the taking of additional testimony the Commission reversed its previous position and found the injury to be compensable as "arising out of and in the course of his employment". The employer, by certiorari, brings this last award here for review.

In order for an injury to be compensable in Arizona under our Workmen's Compensation Act it must arise "out of and in the course of employment * * * not purposely self-inflicted * * *". Sec. 56-936, A.C.A.1939. Both the elements "arising out of" and "in the course of employment" must coexist at one and the same

time in order that an award be sustained. Pacific Fruit Exp. Co. v. Industrial Comm., 32 Ariz. 299, 258 P. 253, 55 A.L.R. 975; Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812. "The expressions 'arising out of' and 'in the course of' the employment are not synonymous; but the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' to refer to the time, place, and circumstances under which it occurred. An injury which occurs in the course of the employment will ordinarily, but not necessarily, arise out of it, while an injury arising out of an employment almost necessarily occurs in the course of it." 71 C.J. 644.

■ In the case at bar the undisputed facts show that the injury occurred at the employer's plant during the claimant's regular working hours for which he was being paid, and at a location in the plant not prohibited to him when and if he be there present for proper purposes. Under such situation there can be no doubt that the injury occurred in the course of the claimant's employment, the crux of the problem being confined to whether said injury arose out of this employment. "In order that an injury may be said to have arisen out of the employment, it must have been the rational consequence of, or have had its origin in, a risk inherent in, or connected with or reasonably incident to, the employment, flowing therefrom as a natural consequence. In other words, the act being performed by the Workman at the time of his injury must be part of the duty he was employed to perform or must be reasonably incidental thereto." 71 C.J. 651, 652. See, also, Caswell's Case, 305 Mass. 500, 26 N.E.2d 328; Goodyear Aircraft Corp. v. Industrial Comm., 62 Ariz. 398, 158 P.2d 511."

■ The rules governing the liability of an employer under Workmen's Compensation Acts for injury to his employee while such employee is engaged in an act for his own individual benefit wholly apart from his job and in no way incidental to it, vary with the situation. If such act is done with the employer's permission, an injury sustained by an employee while so occupied is usually compensable; 71 C.J., Workmen's Compensation Acts, Sec. 425; whereas if done without permission, such an employee is usually denied compensation. 71 C.J., Workmen's Compensation Acts, Sec. 426.

■ More specifically, where, as here, an employee is, while doing such act, violating a rule, order, or warning of his employer, we are met again with separate rules to fit separate kinds of situations falling under this general classification. If the rule relates only to the manner of accomplishing the work that the employee is directed to perform, a violation of such rule "when he (the employee) adopts a forbidden method to accomplish an authorized result" usually does not destroy his right to compensation. But where, however, the rule is one limiting the scope, ambit, or sphere of work which the employee is authorized to

do, such a violation forecloses the compensability of an injury so sustained. Prosser on Torts, 1941, 542; 71 C.J., Workmen's Compensation Acts, sec. 459. But even in this instance, the violated rule must be one of which the employee is cognizant, and must be a rule that is in use, applicable to this employee, and enforced. 71 C.J. 745, 767.

There is no difficulty with the legal principles involved but only with their proper application to the facts at hand. The Court must concern itself with this claimant; his knowledge and state of mind in regard to the rules of the plant at the time of the injury, and the possible justification therefor.

The record before us is replete with the sharpest conflict in testimony regarding whether or not the lower management level "winked" at the enforcement of the plant rule to not make souvenirs. And we are well aware of the fact that where there is a conflict in evidence, the Commission's findings of fact must be accorded the same weight as if made by a trial court. Blasdell v. Industrial Comm., 66 Ariz. 1, 181 P.2d 620. Although there is conflicting evidence as to whether the claimant two hours prior to the accident was warned against such activity no conflict exists concerning the fact that about two days prior to the accident this claimant along with some of the other men was specifically told to leave these shells alone.

"Q. Had you ever been told that you should not work on these shells or use them? A. In a sense, yes. I will say we were told not to fool with these shells at all, to leave them alone.

"Q. How were you told? Who told you and when, if you recall? A. On previous days, I would say about two days before this accident occurred, Mr. Mautz got around the boys and told them to quit fooling around with those shells. That is all the statement he ever made; there was no such thing as a stiff warning.

"Q. Mr. Mautz was your foremen? A. Yes.

"Q. He told you to quit fooling around with these shells? A. He told all of us, not me alone.

"Q. You had that information, you were included? A. Yes."

Nor does this claimant anywhere contend that either prior to or after this warning he himself experienced any "winking" at this rule. And although this claimant maintains that he relied upon what he "generally understood" from the other men in regard to "winking" at this rule, still it is not disputed that at least two men were fired for just such activity, and this claimant himself slipped away alone to an empty room to work on his own souvenir. It was there that the accident occurred.

Under these undisputed facts there can be no justification for Lindsay to ignore this rule. Although the act is to be

construed liberally in favor of the employee, Blasdell v. Industrial Comm., supra, it does not purport to make the employer an insurer of his men, Goodyear Aircraft Corporation v. Industrial Comm., supra; and the burden is upon the claimant to show that his case falls within the requirements of compensability, Pacific Fruit Exp. Co. v. Industrial Comm., supra.

■ As a final reason why the award should be sustained the Commission advances the proposition that the employer was guilty of negligence in not furnishing the claimant a safe place to work, in that it permitted live shells to become mixed with exploded shells when it knew that its employees were using said shells to make gadgets. Its counsel argues that even though the claimant may have occupied at the time of injury only the status of a licensee or permittee, still the accident occurred in the course of his employment, and hence the employer is liable and the injury compensable. Even if otherwise valid (which question we do not now decide) a sufficient answer to this contention is that in the award under review the Commission neither found nor attempted to find negligence, nor did it ground the award on such a theory. See Sec. 56-972, A.C.A.1939, and Federal Mutual Liability Ins. Co. v. Industrial Comm., 31 Ariz. 224, 252 P. 512.

Award set aside.

STANFORD, C. J., and LA PRADE, J., concur.