230 P.2d 686

**GOMEZ v. INDUSTRIAL COMMISSION et al.**

**No. 5413.**

Supreme Court of Arizona.

May 7, 1951.

Award Set Aside on Rehearing July 12, 1951.

See 72 Ariz. 265, 233 P.2d 827.

Leonard S. Sharman, of Phoenix, for petitioner.

Donald J. Morgan, Phoenix (H. S. Mc-Cluskey and Robert E. Yount, Phoenix, of counsel), for respondent Insurance Carrier.

LOCKWOOD, Superior Court Judge.

The petitioner, Cresencia Gomez, has appealed by certiorari for a review of an

award of the Industrial Commission of Arizona, respondent insurance carrier, which denied petitioner compensation for an injury suffered while in the employ of John M. Jacobs, doing business as John Jacobs Farms.

Petitioner has made two assignments of error, one directed to the Industrial Commission's findings, and the other to its Award, the grounds for both being that they were not supported by and were contrary to the evidence. For this reason we must examine the evidence in the record, not for the purpose of determining its weight, but to ascertain whether there was substantial evidence upon which the Commission could lawfully base such findings and award.

From the record, the facts appear as follows: Gomez, a man sixty-five years of age, was employed by John Jacobs Farms as a sheep herder, working twenty-four hours a day for seven days per week for nearly a year prior to March 14, 1950, with the exception of one day off, which time he spent visiting his family. On March 14, 1950, and some time prior thereto, while in the course of his duties, he lived in a tent located in one corner of a field owned and cultivated by his employer, which field had been ploughed some time before that date. His living arrangements were simple, consisting of the tent and a camp fire in which a dutch oven was partially buried.

On the date above mentioned, toward evening, a friend named Alejo Serna came to visit Gomez, and found him in the tent, on a cot, his clothes smoking, and the cot on fire. Serna took Gomez outside the tent, extinguished the fire from his clothes and the cot, and then went to get help. He brought a man back to the camp, and together they took Gomez to St. Monica's hospital. During all this time Gomez did not converse to any extent with anyone, except to tell Serna when the latter first arrived that he "fell". Upon arrival at the hospital it was discovered that he was suffering from severe burns on his legs, his right arm, his face, and his left arm, the last being so badly burned that the bone was charred, later necessitating its amputation between the shoulder and the elbow.

On March 18, 1950, Evan S. Stallcup, a claims investigator for the Industrial Commission, went to the hospital to talk with Gomez, and on March 20th submitted a written report of his interview. In the report the investigator stated:

"He speaks little English. However, his nurse acted as interpreter, and I obtained his statement. No attempt was made to obtain a signed statement at this time, as both the claimant's arms and hands are still badly burned.

"The claimant states that on the evening in question he had finished his dinner and was sitting on his makeshift camp stool in front of his fire. *Suddenly, he said, he felt an attack coming on.* He fell off his stool and into the camp fire in front of him. At first he felt nothing and did not realize he

was on fire. (It is my knowledge that this is a common occurrence following a heart attack. Because of the paralyzing action of such an attack, no pain of any kind is felt for several moments following the attack.) He got up out of the fire, went into his tent and lay down on his cot. His friend, Serna, appeared to visit with him about this time and it was then, finally, that he realized his clothing was on fire. He and Serna put out the fire and Serna fixed the cot so that the claimant could lie down. Serna then went for help.

*"The claimant says that he has suffered a similar attack once before, about a year ago, before he went to work for John Jacobs Farms.* He was at home standing talking to a friend when he suddenly collapsed to the floor. At that time the doctor told him that it was his heart."* (Emphasis supplied).

A printed form, with blank spaces to be filled in, and designated as "Initial Report of Attending Physician" was filed with the Industrial Commission on March 16th. Therein, following the printed direction "State in patient's own words where and how accident or cause of disability occurred" is the statement "He fainted and fell into the campfire suffering burns." This report was signed by Dr. D. A. Polson, the physician who attended Gomez after he went to the hospital.

On March 23d, 1950, the Industrial Commission made an award denying Gomez compensation, finding that he did not sustain a personal injury by accident arising out of and in the course of his employment. The record does not show any statement or claim for compensation signed by Gomez prior to this time, but thereafter upon timely protest and application for a rehearing, the Industrial Commission granted such rehearing which was held on June 1, 1950. Some eleven witnesses, including the petitioner, Gomez, appeared and testified.

Gomez, through an interpreter, testified that: On the day of the accident he was sitting on a box by the camp fire; he stood up and lifted the box, and as he turned, he hit some "adobe" formed into a lump of dirt, which caused him to fall; that he struck his head against some iron bars which he had placed over the fire to put his cooking pots on, and didn't know what happened after that; that he had never had any trouble with his heart, nor fainted nor fallen down in the preceding year or so; that he did not remember the investigator, Mr. Stallcup, or anyone coming in the hospital and talking with him through the nurse, Miss Josephine Trujillo.

Miss Trujillo, appearing as a witness, stated she had attended Gomez as a student nurse at the hospital; that on March 18th she interpreted to Stallcup what Gomez said; that Gomez did not say anything about having an "attack", and did not say, and she did not interpret, that he had had a "similar attack" about a year before; that

Gomez said he had built a fire and was preparing his supper, and was walking toward the fire and fell over a clump of mud and fell and became unconscious.

The witness Dr. Polson testified that the statement in his report as attending physician, heretofore referred to, that Gomez "fainted and fell into the camp fire" was actually without factual knowledge on his part, but that the basis of such statement was information he had received from someone other than Gomez at the hospital —probably either the internes or nurse who first saw Gomez in the emergency room. He further testified that Gomez' burns were of such severity that he believed they could not have been incurred unless Gomez had been in the fire for some time, and was unconscious. He said in his opinion a *heart* attack could not have caused such a period of unconsciousness; that he had examined Gomez and found him suffering from arteriosclerosis and hypertension, either of which might have caused a stroke, of which there was no evidence, or "periodic periods of complete unconsciousness due to lack of circulation in the brain." He further stated that he did not look for nor see evidence of any bruise on Gomez' head, but treated him for burns which went pretty high on his head. He said he could offer no good opinion as to whether or not the arteriosclerosis had anything to do with the accident, although he stated several times that a "heart attack" could not have rendered Gomez un-

conscious or paralyzed for long enough to become so badly burned.

On his examination at the rehearing the investigator, Stallcup, reiterated the statement made in his written report dated March 20th, viz., that he questioned Gomez on March 18th through Miss Trujillo as interpreter, and that Gomez had declared that on the date of the accident he felt an "attack" coming on, and fell over the stool into the camp fire.

There appears to be no controversy that the accident and resulting injury arose in the course of petitioner's employment, the only disputed question being whether it arose out of such employment. The evidence is uncontroverted that the petitioner fell into the fire and suffered more than ordinary burns as a result thereof. The proximate cause of such injuries was recognized by both petitioner and the Industrial Commission as the loss of consciousness by Gomez, accounting for his being unable to get out of the fire before his burns became so severe, and there is conflicting evidence as to the cause of such loss of consciousness.

The doctor, while stating that neither a "heart attack" nor a "stroke" was in his opinion the cause, did state that Gomez had arteriosclerosis and hypertension, either of which could have caused "periodic periods of complete unconsciousness due to lack of circulation in the brain," though he did not say they actually did so. The investigator

testified Gomez had made a declaration to him shortly after the accident that he felt an "attack" coming on and that he had had a similar "attack" before that. At the rehearing the interpreter, Miss Trujillo, flatly denied that Gomez had made, or she had interpreted, such declaration to the investigator, and Gomez himself said he didn't remember talking with Stallcup.

This is obviously one of those "hard cases" which must excite the sympathy of everyone for the pitiful condition in which the petitioner involuntarily finds himself. The Workmen's Compensation Act, however, does not provide compensation for every injury which an employee may suffer while in his employment, but only where such accident and resulting injury arises out of and in the course of such employment, Ocean Accident & Guarantee Corp. v. Industrial Comm., 32 Ariz. 265, 257 P. 641; Goodyear Aircraft Corp. v. Gilbert, 65 Ariz. 379, 181 P.2d 624. The law makes the Industrial Commission a tribunal for determining whether the facts bring a case within the law for compensation purposes. It is not bound by ordinary rules of evidence, but there must be reasonable evidence on which to base its findings and award. If there is a conflict in such evidence, the Commission may determine the credibility of witnesses and the weight to be given their testimony as does the court or jury in a civil action. Smith v. Aluminum Co. of America, 62 Ariz. 160, 155 P.2d 628.

In the present case there is a conflict in the evidence, which the Commission has resolved against the petitioner. We cannot say that their decision was unreasonable. This Court, had it been the trier of the facts, might well have resolved the matter in favor of the petitioner, but under our long established rule we will not set aside the findings or award of the Commission if there is reasonable evidence to sustain it. Bragg v. Industrial Commission, 71 Ariz. 37, 223 P.2d 180. We therefore must conclude that petitioner's assignments of error are without merit.

Award Affirmed.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.

Justice R. C. Stanford, being disqualified, the Honorable Lorna E. Lockwood, Judge. of the Superior Court of Maricopa County, was called to sit in his stead.