382 P.2d 673

Shirley L. GAUMER, a widow, for herself and minor children, Petitioner,

v.

The INDUSTRIAL COMMISSION of the State of Arizona, Respondent Insurance Carrier, and Grand Canyon Airlines, Inc., Respondent Employer, Respondents.

No. 7677.

Supreme Court of Arizona.

In Division.

June 12, 1963.

196

Rees, Estes & Browning, Tucson, for petitioner.

Lorin G. Shelley, Phoenix, for respondent The Industrial Commission of Arizona; Donald J. Morgan, C. E. Singer, Jr., Ben P. Marshall, Robert D. Steckner, Phoenix, and Raymond E. Peterson, of counsel.

UDALL, Vice Chief Justice.

Wilber Edwin Gaumer was killed December 5, 1961 in an aircraft accident. The Industrial Commission denied the application of his widow and minor children for survivors' benefits. The sole question raised in this review of that action is whether Gaumer died from injuries by accident arising out of and in the course of his employment.

Gaumer was employed by Grand Canyon Airlines, Inc., and served it and two related corporations as aircraft mechanic, charter pilot, flight instructor and airplane salesman. He was subject to 24 hour call by his employer, but unless so called his normal working hours were 8 a. m. to 5 p. m., Monday through Saturday. The normal lunch hour was 12 noon to 1 p. m., but this was frequently altered when the needs of the business intervened. When employees worked during other than normal working hours they took time off during working hours to "balance it off".

On Sunday December 3, 1961, Gaumer was called at his home by E. L. Stringer, operator of the Nogales International Airport, who asked if Gaumer would like to deliver a modified P–51 aircraft to Rudolfo Elias Calles, Jr., in Ciudad Obregon, Mexico. Stringer had sold the P–51 to Calles in a transaction in which neither Gaumer nor his employer had taken part. Gaumer indicated he had been wanting to fly that type of plane for some time and agreed to fly it to Mexico the following Sunday, his day off. There was no agreement to compensate Gaumer or his employer. The next evening, Gaumer taxied the P–51 from the Air National Guard ramp at the Tucson airport, where Stringer had parked it three days previously, and parked it beside his employer's hanger at the same airport. At that time he informed his employer of his intention to fly the plane to Mexico the next Sunday.

On Tuesday, December 5, 1961, Gaumer informed his employer that he planned to take the P–51 up that day to try it out and familiarize himself with it. At approximately 12 noon of that day, Gaumer and a fellow employee attempted to start the P–51, but could not get it started. They then ate lunch, obtained equipment to assist in starting the plane, and succeeded in starting it a little before 1 p. m. Gaumer and his companion then made what appeared to be a normal take off, until the plane reached an altitude of approximately 400 feet. At that point engine failure was experienced and the plane crashed, killing both occupants.

It is the petitioner's position that the fatal injury resulted from an accident arising out of and in the course of Gaumer's employment because those in whose interest Gaumer was acting, Stringer and Calles, had been customers of Gaumer's employer (although not in connection with the sale and delivery of the P–51), and because the employer permitted or acquiesced in Gaumer's flight to test the plane, a flight which necessarily would have continued into Gaumer's normal working hours.

▇ A compensable injury must both "arise out of" the employment, and be sustained "in the course of" the employment. The first term refers to the origin or cause of the injury, the second to the time, place and circumstances under which it occurred, Peter Kiewit Sons' Co. v. Industrial Commission, 88 Ariz. 164, 354 P.2d 28 (1960). Generally, an accident that does not occur in the course of the employment does not arise out of it.[1]

▇▇ Where an injury is suffered by an employee while engaged in acts for his own purposes or benefit (other than acts necessary for his personal comfort and convenience while at work) such injury is not in the course of his employment, Goodyear Aircraft Corp., etc. v. Gilbert, 65 Ariz. 379,

181 P.2d 624 (1947). Moreover, where an employee acts for the benefit of a third person, an injury sustained in such conduct is not generally held to be in the course of the employment, unless the conduct also benefits the employer, e. g. Borel v. United States Casualty Co., 233 F.2d 385 (5th Cir., 1956); Feiber v. Leonard, Ralph & Jones, 284 Mich. 381, 279 N.W. 870 (1938); Chaney v. Industrial Commission, 120 Colo. 111, 207 P.2d 816 (1949). This is true even though the employer permits the employee to undertake the act for the benefit of another, Gibson v. Blower's Paint Service, 140 Pa.Super. 216, 14 A.2d 154 (1940); Board of Education of Logan City v. Industrial Commission, 102 Utah 504, 132 P. 2d 381 (1942).

Here, the only benefit to Gaumer's employer from the activity in which Gaumer was fatally injured was the possible good will of two of the employer's former and, at that time, potential customers, Stringer and Calles. It is undisputed that the employer gained no benefit from the sale and delivery of the P–51. It had not serviced the aircraft, nor had it the facilities to do so.

▇ While there are some cases where the benefit of good will to the employer was

---

1. This is the converse of the statement " * * * an injury arising out of an employment almost necessarily occurs in the course of it." Peter Kiewit Sons' Co. v. Industrial Commission, supra, 88 Ariz. at 168, 354 P.2d at 30. See also Bennett's Case, 140 Me. 49, 33 A.2d 799 (1943); Jones v. Texas Indemnity Insurance Co., 223 S.W.2d 286 (Tex.Civ.App. 1949).

found sufficient to make the employees' conduct in assisting customers within the course of the employment,[2] these cases involved situations where the third parties bore an obvious customer relationship to the employer at the time the injury took place or situations where the employer, by specific direction or by accepting a practice, encouraged the employee to render favors to potential customers. Where the customer relationship, and the good will benefit to the employer, is not apparent in the circumstances, but is merely speculative, the activity and the resultant injury have been held not to be in the course of employment, Gibson v. Blower's Paint Service, supra.

Here, the good will possibilities are extremely remote and speculative, if not entirely nonexistent. Gaumer was not injured while making the delivery flight he had been requested by Stringer to make, but on an entirely separate flight undertaken on his own volition. There was no showing that Stringer or Calles requested or even authorized Gaumer to test fly the P–51. There was no showing that such a flight was necessary. There was no indication that either Stringer or Calles would be pleased that such a flight occurred. Instead, there was an indication that Gaumer was eager to fly this particular type of aircraft. Gaumer planned both the test flight and the delivery flight to Mexico for his normal time off from employment duties, thus indicating his understanding that the benefit to come from the flights was personal to him.

 We hold that upon this record the petitioner has not sustained her burden of showing the injury to be one resulting from an accident arising out of and in the course of the employment. The award of the industrial commission is affirmed.

BERNSTEIN, C. J., and LOCKWOOD, J., concur.

---

2. See, e. g. 1 Larson, Workmen's Compensation, § 27.22 and cases cited therein.