524 P.2d 1331
**TRUCK INSURANCE EXCHANGE,**
Petitioner,

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Marsha Kay Henderson, widow of Michael M. Henderson, Deceased, Respondent Employee,**

**Jim Click Ford, Inc., Respondent Employer.**

**No. 1 CA-IC 926.**

Court of Appeals of Arizona,
Division 1,
Department B.
Aug. 6, 1974.
Rehearing Denied Sept. 16, 1974.
Review Denied Oct. 15, 1974.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for petitioner.

Rees, Mercaldo & Smith, P. C., by Brian E. Smith, Tucson, for respondent employee.

Bilby, Thompson, Shoenhair & Warnock, P. C., by William A. Scanland, Tucson, for respondent employer.

William C. Wahl, Jr., former Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

## OPINION

JACOBSON, Chief Judge, Division 1.

Is an automobile salesman who drives his employer's modified racing car within the course and scope of his employment during the race?

The deceased, Michael M. Henderson, was employed as an automobile salesman by the respondent employer, Jim Click Ford, Inc. Henderson's compensation was based upon commissions earned by selling cars, or if his commission fell below the minimum federal wage, he was paid for the actual hours he worked on the sales floor.

Prior to May 6, 1972, Henderson had for some time been an automobile racing buff and had belonged to several racing-oriented organizations, the dues of which were paid by his employer. In December, 1971, Henderson prevailed upon his employer to modify a Ford Maverick, which was owned by his employer, for racing purposes. The employer was motivated in supplying this vehicle by expectations of increased sales in both cars and parts. The employer further budgeted $5,000 to $6,000 for spare parts for this vehicle. This modified Maverick was not used except for drag racing, and bore the printed name of the employer.

It appears that Henderson, with the permission of his employer, chose when and where this vehicle was to be raced. He received no extra compensation from his employer for this activity, beyond a possible increase in sales commissions generated by his racing activities.

On May 6, 1972, Henderson, with the specific permission of his employer, was driving this Maverick in a time trial at the Tucson Dragway, when he was killed in a one-car accident. Henderson's widow filed for benefits under the Workmen's Compensation laws of this state. The sole issue before the Industrial Commission was whether Henderson's activities at the time of his death were in the course and scope of his employment, so as to entitle his wid-

ow to workmen's compensation benefits. The Commission held they were, and the insurance carrier sought review of that award.

██ Arizona, like most states, has adopted a two-prong test to determine an employee's rights to compensation under the Workmen's Compensation Act, that is, the injury or death must be "by accident *arising out of* and *in the course of* his employment." A.R.S. § 23–1021. The "in the course of" portion of this test generally refers to the time, place and circumstances under which the accident occurred, Goodyear Aircraft Corp. v. Gilbert, 65 Ariz. 379, 181 P.2d 624 (1947), while the "arising out of" portion requires a causal relation between the employment and the injury. City of Phoenix v. Industrial Comm'n., 104 Ariz. 120, 449 P.2d 291 (1969). In this case we are primarily concerned with the "in the course of" requirement, for if we determine that automobile racing was in the scope of Henderson's employment, obviously there is a causal relation between that racing and his fatal accident.

██ Further, our analysis of this problem must center on whether Henderson's basic employment as a car salesman had been expanded by his employer so as to embrace activities not normally associated with that basic employment. (Normally, the scope of duties required to be performed by a car salesman would not embrace the outside activity of car racing.) In assessing the so-called "outside activities" cases the "circumstances" of the generally accepted "time, place and circumstance" test of determining course of employment becomes of utmost importance. What "circumstances" can cause activity to fall within the course of employment, although the activity is not generally activity for which the employee was employed, can best be ascertained by asking the following questions: Did the activity inure to the substantial benefit of the employer? *See* Gaumer v. Industrial Comm'n., 94 Ariz. 195, 382 P.2d 673 (1963). Was the activity

engaged in with the permission or at the direction of the employer? *See* Goodyear Aircraft Corp. v. Gilbert, *supra,* 65 Ariz. 379, 181 P.2d 624 (1947). Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? *See* Goodyear Aircraft Corp. v. Industrial Comm'n., 62 Ariz. 398, 158 P.2d 511 (1945). Could the employee reasonably expect compensation or reimbursement for the activity engaged in? *See* Goodyear Aircraft Corp. v. Gilbert, *supra.* And, finally, was the activity primarily for the personal enjoyment of the employee? *See* U. S. Fidelity & Guaranty Co. v. Industrial Comm'n. of Arizona, 43 Ariz. 305, 30 P.2d 846 (1934).

If the circumstances show that the answer to these questions reveal sufficient indicia of employment-related activity, generally the activity will be held to be within the course of the original employment. *See* 1 Larson, Workmen's Compensation §§ 22.24 and 22. 30.

Applying these criteria here, it is apparent that Henderson's employer felt that drag racing was of a sufficient benefit to his automobile dealership to have furnished a racing car and budgeted $5,000 to $6,000 to keep it going. It is also apparent that while the particular race Henderson was going to participate in was within his control, such authority to pick and choose races was with the express permission of Henderson's employer and, in fact, the employer specifically authorized Henderson's appearance in the fatal race. Moreover, at the time Henderson was killed he was driving a vehicle supplied by his employer.

While Henderson was not specifically paid by his employer to race automobiles, it can be reasonably argued that Henderson's appearance at drag races, driving the Jim Click car, could generate customers for his employer who in turn would seek Henderson out to make the sale, thus generating commission income.

Whether Henderson's engaging in auto racing was primarily for his personal en-

joyment is a more difficult question. Obviously, Henderson was not forced by his employer to race and we therefore must have to assume that he derived some enjoyment from this activity or he would not have raced. However, we are not prepared to say that merely because an employee's social propensities may coincide with a legitimate business activity, that the presence of the social propensity alone would remove the activity from the course of the employment.

We therefore hold that the indicia of employment-related activities present here are such as to justify the Commission in finding that the petitioner's employer had expanded the normal duties associated with a car salesman so as to embrace auto racing and that the injury received was within the course of Henderson's employment.

For the foregoing reasons, the award of the Industrial Commission is affirmed.

HAIRE, P. J., and EUBANK, J., concur.