607 P.2d 22

**ANDERSON CLAYTON & COMPANY, Petitioner Employer,**

**Ranger Insurance Company c/o Arizona Adjustment Agency, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Danny W. Graves, Respondent Employee.**

**1 CA–IC 2127.**

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 20, 1979.

Rehearing Denied Feb. 5, 1980.

Review Denied Feb. 26, 1980.

**40**

Lewis & Roca by Merton E. Marks, R. Kent Klein, Barry Fish, Phoenix, for petitioner employer and petitioner carrier.

James L. Stevenson, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Charles M. Wilmer, Phoenix, for respondent employee.

## OPINION

JACOBSON, Judge.

The sole issue presented in this review of an award of the Industrial Commission is whether the injuries sustained by the claimant while engaged in "horseplay" are industrially compensable.

The facts are not in material dispute.

Petitioner employer, Anderson Clayton & Company, which operates a cotton gin, hired respondent employee, Danny W. Graves, as a janitor to work from 12:00 midnight to 8:00 A.M. It assigned Graves to work in a shed called the lint room. Prior to this assignment, Graves was not instructed regarding his duties, warned of dangerous conditions, or informed of prohibited practices. However, a co-employee, who controlled the operation of that area, but who was not officially respondent's foreman, explained Graves' duties to him and directly supervised his performance. These duties included cleaning filters on the machines, sweeping up overspills when they occurred, and watching for obstructions in the machines.

During this early morning shift, the workmen in the lint room had extended periods of slack time, that is, time when no active duties had to be performed. On at least three occasions prior to the day of the accident, when lulls occurred, the supervising co-employee diverted himself by riding a bicycle in the lint room, turning sharp corners, riding on one wheel, and running into piles of cotton seed. On the day before the accident, after the co-employee had resumed bicycling during a lull, Graves joined in the horseplay by riding the bicycle and by jumping some fifteen feet from the lint room rafters into a pile of cotton seed.

On the day of the accident, during another lull, the co-employee reappeared with the bicycle. Graves again joined in the bicycling, which spilled out of the lint room to a nearby pile of cotton seed. Both employees rode and jumped into this pile of seed.

Graves then announced his intention to jump some seventy feet from a conveyor into a pile of seed, located some one hun-

dred yards from the lint room. He requested that the co-employee watch out for the foreman and call other employees to witness the jump. After the others arrived, he mounted the conveyor and prepared to jump. The supervising co-employee warned him that there was insufficient seed at that spot. Graves moved to another area, jumped, and sustained serious injuries.

The issue of the compensability of injuries sustained while at work involving so-called "horseplay" has not been specifically addressed in Arizona. It is basically the carrier's position that injuries sustained during such activity neither "arise out of" nor occur "in the course of" employment. Graves, conversely, contends that where the evidence sustains the factual determination that horseplay has become a regular part of the employment conduct, injuries sustained during such activity are compensable.

The legal starting point for any analysis of both parties' positions is the same, that is, do injuries occurring during horseplay activity "arise out of and in the course of employment?" A.R.S. § 23–1021(A).[1] As was stated some time ago in *Goodyear Aircraft Corp. v. Gilbert*, 65 Ariz. 379, 181 P.2d 624 (1947):

> " 'The expressions "arising out of" and "in the course of" employment are not synonymous; but the words "arising out of" are construed to refer to the origin or cause of the injury and the words "in the course of" to refer to the time, place and circumstances under which it occurred.' 71 C.J. [Workmen's Compensation Acts] 644." 65 Ariz. at 383, 181 P.2d at 626.

In 1A A. Larson, Workmen's Compensation Law § 23.61, at 5–140 (1979), the distinction is aptly put:

> "Whenever the basic controversy stems from the nature of a course of conduct deliberately undertaken *by* the claimant, there is primarily a question of course of employment. Whenever the controversy

stems from the nature of a source of injury *to* the claimant, there is primarily a question of 'arising out of the employment.' " (Emphasis in original.)

While the carrier contends that horseplay activity meets neither the test of "arising out of" nor "in the course of" employment requirements, relying primarily upon *Rodriquez v. Industrial Commission*, 20 Ariz.App. 148, 510 P.2d 1053 (1973), we view this, as does Larson, as a "course of employment" question, rather than an "arising out of" question. In *Rodriquez*, the employee was injured when he fell in an unlighted, new construction area, separate and apart from his normal working area. While *Rodriquez* analyzes such conduct under both the "arising out of" and "in the course of" sense, we believe the bottom line of the court's holding of non-compensability is:

> "[W]here an injury is suffered by an employee while engaged in acts for his own purposes or benefits, other than acts necessary for his personal comfort and convenience while at work, such injury is not in the course of his employment." 20 Ariz.App. at 150–51, 510 P.2d at 1055–56.

 It was apparently the hearing officer's conclusion that simply because the injuries here occurred on the employee's premises, the "in the course of" requirement was satisfied. This is too broad. *Royall v. Industrial Commission*, 106 Ariz. 346, 476 P.2d 156 (1970). Rather the test to be applied is whether the particular activity which gives rise to the injury was of a nature that the employee might reasonably be expected to be engaged in it at the time, and it occurred at a place the employee might reasonably be expected to be. *State Compensation Fund v. Keefe*, 22 Ariz.App. 311, 526 P.2d 1266 (1974). In this regard, in order to satisfy the "in the course of" requirement, the activity normally has connotations of benefits flowing to the employer, rather than purely personal benefits flow-

---

1. A.R.S. § 23–1021(A) provides in part:

"Every employee . . . who is injured . . . by accident arising out of and in the course of his employment, wherever the injury occurred . . . shall be entitled to receive and shall be paid such compensation . . . medical . . . and . . . funeral expenses in the event of death, as are provided by this chapter."

ing to the employee. *Gaumer v. Industrial Commission*, 94 Ariz. 195, 382 P.2d 673 (1963). While the benefits being bestowed to the employer by the activity may be indirect, *see Stephenson v. Industrial Commission*, 23 Ariz.App. 424, 533 P.2d 1161 (1975) (injury occurring during recreation activity held compensable as recreation by the employee indirectly benefited the employer); *Truck Insurance Exchange v. Industrial Commission*, 22 Ariz.App. 158, 524 P.2d 1331 (1974) (death resulting from auto racing accident held compensable as racing activity indirectly benefited the employer), some work connected relationship must appear.

It is in this sense that Graves argues that where the horseplay has become a regular practice in the employment, and is approved by the controlling co-employee, injuries resulting from such horseplay are compensable. *See Industrial Commissioner v. McCarthy*, 295 N.Y. 443, 68 N.E.2d 434 (1946). The attorney for the carrier concedes that this principle may, in a particular case, have some application, admitting, at time of oral argument, that a close question of "course of employment" would be presented if Graves had been injured while riding the bicycle supplied by the co-employee. However, the carrier strenuously argues that a seventy foot jump off a conveyor belt one hundred yards from his regular duty area is such a substantial deviation from both the general horseplay and the place and duties of his employment as to remove him from the course of that employment. We agree.

■ There is no conceivable benefit Graves' employer could derive from his jumping off a conveyor belt. The regular horseplay was disapproved by the employer and if it had been discovered, both Graves and the co-employee would have been disciplined. Graves was aware that his conduct was not proper. While the accident occurred during slack time, Graves had to vacate the lint room where he was required to be present in case the machines clogged, go some one hundred yards to an area where he had absolutely no duties to perform and scale a seventy foot high conveyor belt. If a scheme of general horseplay was established it involved "showing off" with a bicycle, not circus leaps from substantial heights. Moreover, there is no evidence to support a conclusion that the regular bicycle horseplay led or escalated into a regular jumping contest. In short, we hold that Graves' leap was of a magnitude to carry him beyond the course of his employment. The resulting crash is his personal responsibility, not that of his employer.

Award set aside.

HAIRE, P. J., and CONTRERAS, J., concurring.