NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FAYETTE A/C, *Petitioner Employer*,

COLORADO CASUALTY, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MARTIN RICKARD (Deceased), *Respondent Employee*.

No. 1 CA-IC 14-0045
FILED 3-26-2015

Special Action - Industrial Commission
ICA Claim No.  20130-460004
Carrier Claim No. 205131340

The Honorable Joseph L. Moore, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Klein, Doherty, Lundmark, Barberich & LaMont, P.C., Phoenix
By Lisa M. LaMont
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Taylor & Associates, PLLC, Phoenix
By Bruce E. Rosenberg
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

¶1       This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a compensable claim. The issue raised is whether the administrative law judge ("ALJ") erred by finding that the respondent employee's injury causing his death arose in the course of his employment. Finding no error, the award is affirmed.

**BACKGROUND**

¶2       The petitioner employer, Fayette A/C ("Fayette"), is a full service residential and commercial air conditioning company with ten employees. The decedent was employed by Fayette as a service manager and crane truck operator. Fayette was hired by a roofing company to use its crane truck to remove and reset an air conditioning unit on a residence during a roofing project. Fayette sent the decedent and two other employees to perform this job. Of the three, only the decedent was trained to operate the crane truck.

¶3       Due to a roofing delay, the Fayette employees were unable to reset the air conditioning unit and the decedent called Fayette to report that they were going to return to the office. Before leaving, however, the homeowner asked the decedent to move several large poles with the crane truck. The decedent agreed, and in the process of moving one of the poles, the crane truck tipped over, causing head injuries to the decedent that ultimately caused his death.

¶4       During the decedent's hospitalization, a workers' compensation claim was filed and, after his death, a claim for dependent's death benefits was filed. The petitioner carrier, Colorado Casualty ("Colorado"), denied the requested benefits, and the decedent's widow timely requested a hearing. At the hearing, the ALJ heard testimony from

the decedent's widow and Fayette's owner, Mark Fayette. The parties filed post-hearing legal memoranda, and the ALJ entered an award for a compensable claim. Colorado requested administrative review, but the ALJ summarily affirmed the Award. Colorado next timely sought review by this court, which has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**[1]

¶5        To dbe compensable, an injury must arise out of and in the course of employment. *See* A.R.S. § 23-1021(A). Based on Colorado's framing of the issue and concession at oral argument, the only question before us is whether the injury occurred in the course of employment. "An injury or accident occurs in the course of [] employment if the employee is injured while [] doing what [an employee] so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during the time." *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970) (internal quotation omitted). Stated differently, "in the course of" pertains to the time, place, and circumstances of the accident in relation to the employment. *Id.*; *Goodyear Aircraft Corp v. Gilbert*, 65 Ariz. 379, 383, 181 P.2d 624, 626 (1947).

¶6        The ALJ applied the totality of circumstances test to conclude that the decedent's injury occurred in the course of his employment.[2]

---

[1]        This court defers to the ALJ's reasonably supported factual findings, but independently reviews whether a claimant's injury arose out of and in the course of his employment, a question of law. *See, e.g., Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988).

[2]        For the first time, in the reply brief on appeal, Colorado argues that the ALJ erred by utilizing this test. In general, this court will not consider an issue on appeal that was not raised before the ALJ. *See T.W.M. Custom Framing v. Indus. Comm'n,* 198 Ariz. 41, 44, ¶ 4, 6 P.3d 745, 748 (App. 2000). This rule stems in part from the requirement that a party must develop its factual record before the agency and give the ALJ an opportunity to correct any errors. *Id.* Furthermore, addressing the merits of the claim, we note that the totality of the circumstances test has been adopted and applied by our supreme court. *Finnegan*, 157 Ariz. at 110, 755 P.2d at 415 ("Whether an activity is related to the claimant's employment--making an injury sustained therein compensable—will depend upon the totality of the

Colorado concedes the decedent's injury occurred during the time and place of employment, but argues it did not occur in the course of his employment because the decedent did not have the employer's permission to operate the crane truck to move the poles and his actions did not directly benefit the employer. Thus, the narrow question here is whether the performance of an unpaid favor for the homeowner was an employment-related activity that the decedent could reasonably be expected to undertake. *See State Compensation Fund v. Keefe*, 22 Ariz. App. 311, 313, 526 P.2d 1266, 1268 (1974).

¶7        Deciding the "reasonably be expected to undertake" inquiry focuses on various factors, including: whether the activity benefited the employer; whether the activity was performed with the employer's permission; whether the employer furnished the equipment to carry out the activity; whether the employee was compensated at the time of the activity; and whether the activity was primarily for the employee's personal enjoyment. *Truck Ins. Exch. v. Indus. Comm'n*, 22 Ariz. App. 158, 160, 524 P.2d 1331, 1333 (1974).

¶8        Addressing these factors in turn, the ALJ found that Fayette could have received goodwill from this favor, a finding supported in the record. Fayette frequently performed work for this roofing company and the record supports a finding that it was in Fayette's best interests to keep the roofing company happy by keeping its customers happy.

¶9        Although the decedent did not have Fayette's express permission to perform the favor, Mark Fayette testified, "I do favors for guys all the time . . . ." The decedent's widow also testified that Mark told her, "that it was something that he probably would have done also if he would have been there." Colorado argues that this is contrary to Fayette's "call-back policy," but the record supports a finding that the call-back policy only applied to changes to a job's work order that changed the price of Fayette's bid on a job and not to an unpaid favor. We also reject Colorado's argument that the decedent abandoned his employment by performing the favor. As discussed above, he was at his appointed job site providing a service on behalf of the company.

¶10        Finally, we are not persuaded that the authorities relied on by Colorado, *Gonzales v. Industrial Commission*, 23 Ariz. App. 179, 531 P.2d 555

---

circumstances."). Accordingly, the court rejects Colorado's purported challenge to the ALJ's use of the totality of the circumstances test.

(1975), and *Gaumer v. Industrial Commission*, 94 Ariz. 195, 382 P.2d 673 (1963), compel a different outcome.

¶11	In *Gonzales*, the claimant was injured on his lunch hour while operating a piece of heavy equipment that he borrowed from another employee to collect scrap wood for his personal use. 23 Ariz. App. at 180, 531 P.2d at 557. Although the employer permitted an employee to take scrap wood for personal use, the employer specifically regulated the activity and required the employee to obtain a pass "which would allow him to collect the wood in his own private vehicle after working hours." *Id*. This court upheld the ICA's determination that the claim was noncompensable, concluding the claimant sustained the injury while using the "employer's equipment to accomplish a task solely for his own personal benefit," and the injury therefore did not arise out of and in the course of employment. *Id*. at 182, 531 P.2d at 559. Unlike the circumstances in *Gonzales*, in this case the decedent did not leave his work area, use equipment not assigned to him, or act for his own personal benefit. Nor was he specifically required to obtain authorization to perform an unpaid favor.

¶12	In *Gaumer*, the employee was a pilot and an aircraft mechanic who was contacted at home by an airplane seller and asked to deliver a plane to its Mexican purchaser. 94 Ariz. at 197, 382 P.2d at 674. The employee told his employer that he was going to fly it during his lunch hour to familiarize himself with it prior to the delivery flight. *Id*. Neither he nor his employer were going to be compensated for the plane's delivery. *Id*. During the lunchtime test flight, the engine failed, the plane crashed, and the employee was killed. *Id*.

¶13	On those facts, our supreme court upheld the ICA's decision denying a claim by the employee's widow for death benefits. *Id*. at 199, 382 P.2d at 675. The court found that there was insufficient benefit to the decedent's employer to bring this injury within the course of employment because the employer did not profit from the sale or delivery of the airplane nor had it serviced the plane. 94 Ariz. at 198, 382 P.2d at 675. The court noted that the only possible benefit for the employer was goodwill or potential future customers. *Id*. at 198-99, 382 P.2d at 675. *Gaumer* is distinguishable because this decedent was at his assigned job site, using his employer's equipment, and was being paid when he performed this favor for the homeowner.

## CONCLUSION

¶14      Because the evidence supports the ALJ's determination that decedent's injury arose out of and in the course and scope of his employment, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: ama