889 P.2d 625

**Caridad O. JAYO, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Flagstaff Tyler Joint Venture, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 93–0139.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 2, 1995.

Schiffman, Hozier & Kurth, P.C. by Alan M. Schiffman, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Peter C. Kilgard, Chief Counsel, State Compensation Fund by Christopher O. Anderson, Phoenix, for respondents employer and carrier.

## OPINION

NOYES, Judge.

This is a special action review of an Arizona Industrial Commission Award denying compensability. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–951(A) (1983); R.P. Special Actions 10(f) (Supp.1994). The issue is whether the Petitioner ("Claimant") was in the course of employment when he was injured while playing hacky sac during a scheduled lockout at a remote jobsite. Applying an independent-judgment standard of review to the totality of circumstances, we hold that Claimant was in the course of employment when injured.

## I. FACTS

Claimant was the general foreman of a crew of ironworkers on a construction project at the White Sands Missile Range, a U.S. military base in New Mexico. Claimant worked for Respondent Employer ("Flagstaff Tyler"), a sub-sub-contractor on the project. Claimant lived in Peoria, Arizona, but he was staying in Socorro, New Mexico, for this job. Socorro was thirty-five miles away from the jobsite, but it was the nearest place to the jobsite with lodging accommodations.

In addition to remoteness, another feature of this job was that employees were locked out of the jobsite during missile tests. The military gave twenty-four hours' notice of the lockouts. Respondent Employer did not pay its employees during lockouts, and it expected them to go back to work and complete their eight-hour day as soon as the lockouts ended, with no credit for time lost due to lockouts. The lockouts were generally scheduled to last about two hours, but they often ended half an hour earlier or later than scheduled. Workers were free to go where they wanted during lockouts, but it was a ninety-minute round-trip drive to Socorro.

Nearby establishments where workers might congregate during lockouts were a bar about nine miles from the jobsite and a cafe-

teria about three miles away. The military had given permission for workers to use the cafeteria during lockouts, and to use the nearby basketball court and horseshoe pit. Most workers preferred the cafeteria to the bar, and forty to fifty workers generally gathered at the cafeteria area during lockouts. Some played basketball and horseshoes, others played "hacky sac," which involves soccer-style kicking of a small bean bag.

On October 6, 1992, Claimant and his entire crew were at the cafeteria during a lockout. While playing hacky sac, Claimant injured his left knee. He finished the workday, but later needed medical treatment and filed a workers' compensation claim. Respondent Carrier denied the claim, and Claimant requested a hearing.

At the hearing, Claimant described the missile range as a remote area. He acknowledged that Flagstaff Tyler did not own or control the cafeteria and did not direct its employees to use this area during lockouts. He explained that he and his crew used the cafeteria area during lockouts because there was no practical alternative and because they wanted to return to work and complete their eight-hour day as soon as the lockout ended, which often was sooner than scheduled. Claimant acknowledged that Flagstaff Tyler did not sponsor, encourage, or know about the recreational activity during lockouts and that he, Claimant, played the hacky sac game for his own benefit, in part to keep limber for the return to work. Claimant and his crew worked with up to one hundred pound loads of rebar, thirty-five feet off the ground.

The owner of Flagstaff Tyler testified that he knew about the lockouts and did not pay employees during them. His employees were on their own time during lockouts, but if he had known of recreational activity during lockouts—and that workers' compensation coverage extended to it—he would have prohibited such activity. Because Claimant was in charge of the Flagstaff Tyler crew at the jobsite, the owner faulted Claimant for not prohibiting recreational activity during lockouts. The owner agreed that the missile range is a remote location and that employ-

ees would want to return to work as soon as possible after a lockout ended.

The Administrative Law Judge ("ALJ") denied compensability. The ALJ found that the injury did not occur on the employer's premises; that Claimant was not working or being paid when injured, but was playing a game for his own pleasure; that Claimant was on his own time and free to go where he chose; and that Flagstaff Tyler did not expressly or impliedly make recreation during lockouts a part of Claimant's services and did not benefit from or provide equipment for the recreational activity. The ALJ concluded that Claimant failed to meet his burden of proof and that "[Claimant's knee symptoms] are not the result of the conditions of his employment, but are the result of non-industrial injury."

After the Award was summarily affirmed on administrative review, Claimant brought this special action.

## II. DISCUSSION

■ Claimant asserts that his injury occurred in the course of and arose out of employment because he "acted reasonably, during an enforced lull in work, while at a location where he was permitted to be." A compensable injury must both arise out of and occur in the course of employment. *See* A.R.S. § 23–1021(A) (1983). In general, an injury "arises out of" employment if its origin or cause is employment-related; it occurs "in the course of" employment if the time, place, and circumstances of injury are employment related. *E.g., Circle K Store No. 1131 v. Industrial Comm'n,* 165 Ariz. 91, 94, 796 P.2d 893, 896 (1990).

Because it is conceded that Claimant's injury arose out of playing hacky sac, the case turns on whether playing hacky sac was in the course of employment. *See, e.g., Truck Ins. Exchange v. Industrial Comm'n,* 22 Ariz.App. 158, 160, 524 P.2d 1331, 1333 (1974) ("In this case we are primarily concerned with the 'in the course of' requirement, for if we determine that automobile racing was in the scope of Henderson's employment, obviously there is a causal relationship between that racing and his fatal accident.")

Appellate courts defer to the ALJ's findings of fact when reasonably supported by the record, but we independently determine whether those facts support the conclusion that an injury did or did not occur in the course of employment. *E.g., Finnegan v. Industrial Comm'n,* 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988). *But cf. O'Leary v. Brown–Pacific–Maxon, Inc.,* 340 U.S. 504, 507–08, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951) (applying deferential standard of review to finding that injury arose out of and in course of employment). In this case, the facts are undisputed (except for whether the nearest bar was twenty-six miles away as asserted by Claimant, or nine miles away as found by the ALJ). We accept the facts found by the ALJ, but we independently determine whether those facts show Claimant to be in the course of employment when injured.

In making this legal determination, we consider the "totality of circumstances" and decide whether there are " 'sufficient indicia of employment related activity,' " *Finnegan,* 157 Ariz. at 111, 755 P.2d at 416 (quoting *Stephenson v. Industrial Comm'n,* 23 Ariz. App. 424, 426, 533 P.2d 1161, 1163 (1975)), or a " 'sufficient nexus between the employment and injury,' " *id.* (quoting *Nemeth v. Michigan Bldg. Components,* 390 Mich. 734, 213 N.W.2d 144, 146 (1973)). The general concept of "totality of circumstances" has been refined by authorities into specific factors to consider in reference to particular categories of cases. For example, a leading Arizona case articulates the following factors to consider in determining whether off-premises recreational injuries are in the course of employment:

What 'circumstances' can cause activity to fall within the course of employment, although the activity is not generally activity for which the employee was employed, can best be ascertained by asking the following questions: Did the activity inure to the substantial benefit of the employer? Was the activity engaged in with the permission or at the direction of the employer? Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? Could the employee reasonably expect compensation or reimbursement for the activity engaged in? And,

finally, was the activity primarily for the personal enjoyment of the employee?

*Truck Ins. Exchange,* 22 Ariz.App. at 160, 524 P.2d at 1333 (citations omitted); *see also, e.g., Lemmon v. Industrial Comm'n,* 154 Ariz. 63, 65, 740 P.2d 484, 486 (App.1986).

A leading commentator provides the following articulation of factors to consider in general when determining whether an activity is related to employment:

[a]n activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly. Under the modern trend of decisions, even if the activity cannot be said in any sense to advance the employer's interests, it may still be in the course of employment if, in view of the nature of the employment environment, the characteristics of human nature, and the customs and practices of the particular employment, the activity is in fact an inherent part of the conditions of that employment.

1A Arthur Larson, *The Law Of Workmen's Compensation* § 20.00 (1993), *quoted in S.E. Rykoff & Co. v. Industrial Comm'n,* 172 Ariz. 22, 25, 833 P.2d 39, 42 (App.1992). Larson also articulates more specific tests for several categories of cases, *id.* § 20.20, at 5–4, including personal comfort activity, recreational and social activity, horseplay, resident employees, and travelling employees, *id.* §§ 21.00 to 25.00. For example, recreational activities are said to be in the course of employment when:

(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation ... brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

*Id.* § 22.00.

Although the ALJ did not expressly rely on the *Truck Ins. Exchange* and Larson recreational-activities tests, they appear to

have been in his mind, for his findings in significant part correspond to those tests. If the inquiry were strictly limited to specific recreational-activities tests, we would agree with the ALJ that the circumstances of this claimant's injury did not fit neatly into one of these tests. But we find the facts presented by this case so exceptional that the specific tests do not fairly measure them; the unique facts in this case must be measured by the more general "totality of circumstances" test.

■ As a general rule, course of employment includes regularly occurring recreational activity on the employer's premises. *See* 1A Larson, *supra* § 22.11. If recreational activity occurs off the employer's premises, "some [other] independently convincing association with the employment" must exist. *Id.* at 5–92. In many cases, direct employer sponsorship or benefit provides the necessary nexus. *Id.* §§ 22.20 to 22.30. But the absence of these indicia is not conclusive. The ultimate test remains whether the totality of circumstances establishes sufficient indicia of employment connection. *See Finnegan,* 157 Ariz. at 111, 755 P.2d at 416.

■ We conclude that the totality of circumstances in Claimant's case provides the necessary connection to employment. The jobsite was in a remote area and the work was regularly interrupted by lockouts and enforced periods of idleness. Claimant could leave the range during lockouts, but he and his peers had no practical alternative to doing other than standing by, as a group, waiting to get back on the job as soon as the lockout ended, which could be earlier or later than scheduled. Claimant was an ironworker, a trade that requires more physical activity and agility than many. A reasonable employer would expect that a crew of ironworkers—when forced into two hours of mid-shift idleness, thirty-five miles from town—might be active, and play games such as hacky sac. In these circumstances, Claimant and his peers were employees who "cannot be expected, during a slack period, to sit in idleness and gossip. The employer must expect that they will engage in some form of activity." *Meigel v. General Foods Corp.,* 2 A.D.2d 945, 156 N.Y.S.2d 420, 421 (1956),

quoted in 1A Larson, *supra* § 23.65, at 5–222. The military not only acknowledged this reality of human nature, it accommodated it by offering the use of a basketball court and horseshoe pit during lockouts. The general contractor, with supervisors on the scene, approved or at least acquiesced in this arrangement and these activities. There had been several lockouts and recreation periods at the cafeteria prior to Claimant's injury, and no one voiced an objection about the recreational activities.

Applying the "totality of circumstances" test, we conclude that sufficient nexus exists between the employment and the injury to compel the conclusion that Claimant was in the course of employment when injured. We do not address Claimant's arguments concerning travelling employees and remote site employees.

The Award denying compensability is set aside.

CONCURRING:

KLEINSCHMIDT, P.J., and O'MELIA, J., Pro Tem *.