932 P.2d 804

Robert C. NOBLE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

ABCO Markets, Inc., Respondent Employer,

Transamerica Insurance Company, Respondent Carrier.

No. 1 CA–IC 95–0166.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 12, 1996.

Reconsideration Denied March 4, 1997.

---

49

Ellen E. Hendrickson and Toby Zimbalist, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Donald L. Cross and Lisa M. Ashbrook, Phoenix, for Respondents Employer and Carrier.

## OPINION

THOMPSON, Judge.

■ This is a review of an award and decision upon review denying compensability. Applying our independent judgment, we conclude that an injury arises out of and in the course of employment when a worker voluntarily but reasonably uses his or her employer's premises after-hours and the origin of the risk resulting in the injury is the employer's business use of the premises. We accordingly set aside the award and decision upon review.

## FACTS AND PROCEDURAL HISTORY

Respondent employer (ABCO) employed petitioner employee (claimant) in a Phoenix area grocery store. The store premises included a break room for employees. Employees sometimes used this break room after finishing work. ABCO neither encouraged nor prohibited employees from using the break room after-hours, and supervisors sometimes discussed work with employees using the break room after-hours. ABCO also used the room to store cartons of paper products.

Claimant worked as a stock clerk between 12:00 a.m. and 8:00 a.m. On August 15, 1992, after finishing his shift and clocking out, claimant bought coffee and doughnuts at ABCO and joined co-employees in the break room. Approximately fifteen minutes later, a stack of cartons stored in the break room collapsed onto and injured claimant.

In July 1994, claimant filed a workers' compensation claim. Respondent carrier (Transamerica) denied this claim and also raised the affirmative defense of an untimely claim. After a hearing, the administrative law judge excused the untimely filing but nevertheless denied compensation:

The fact is that the applicant finished his shift and had clocked out. *Nothing about his employment required him to stay for a break on the premises of the defendant employer. That was a personal choice which he could make or forego. He chose to do it.* It is concluded that when he was there and when the boxes fell upon him he was there in a "personal activity" context rather than being in any context which would bring him within the purview of the workers' compensation coverage. His alleged injuries did not arise out of and within the course of his employment with the defendant employer. His claim is not compensable.

(Emphasis added.)

The administrative law judge affirmed this award on review. Claimant then brought this special action. This court has jurisdiction under Ariz.Rev.Stat. Ann. (A.R.S.) §§ 12–120.21(A)(2) (1992), 23–951(A) (1995).

On review, claimant contends that his injury arose out of and in the course of his employment. For the reasons that follow, we agree.

## DISCUSSION

■ A compensable injury must arise out of and in the course of employment. A.R.S. § 23–1021(A) (Supp.1996); *e.g., Royall v. Industrial Comm'n,* 106 Ariz. 346, 349–51, 476 P.2d 156, 159–61 (1970); *Jayo v. Industrial Comm'n,* 181 Ariz. 267, 269, 889 P.2d 625, 627 (App.1995). Both statutory elements must be satisfied, but the strength of one element may counterbalance the weakness of the other to yield a compensable claim. *See, e.g., Royall,* 106 Ariz. at 349–50, 476 P.2d at 159–60 (citing Larson's "quantum theory" of work-connection); *see also* 1A Arthur Larson, *The Law of Workmen's Compensation* § 29.10 (1996) (discussing "quantum theory"); *Arizona Workers' Compensation Handbook* § 3.2.1, at 3–10 (Ray Jay Davis et al. eds., 1992) ("[Larson's] model may be visualized as a mobile: the weight of the components determines the balance of the whole.").

■ A reviewing court defers to the administrative law judge's reasonably sup-

ported factual findings. *Jayo,* 181 Ariz. at 270, 889 P.2d at 626 (citing *Finnegan v. Industrial Comm'n,* 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988)). It, however, independently decides whether or not the evidence establishes a compensable claim. *Id.*

## A. Arising Out of Employment

■ An injury arises out of employment if its cause is employment-related. *E.g., Royall,* 106 Ariz. at 349, 476 P.2d at 159; *Jayo,* 181 Ariz. at 269, 889 P.2d at 627. To assess whether or not the cause of an injury is employment-related, "the best approach is to classify risks by origin and by nature...." *Arizona Workers' Compensation Handbook* § 3.2.1, at 3–4; *see also,e.g., Nowlin v. Industrial Comm'n,* 167 Ariz. 291, 295, 806 P.2d 880, 884 (App.1990).

■ In the current case, the injury originated in ABCO's business use of its premises to store cartons in the break room. Furthermore, because the general public did not use the break room, only ABCO employees were exposed to the risk of falling cartons that had been stored there. Consequently, claimant's injury clearly arose out of the employment.

## B. Arising In Course Of Employment

■ An injury arises in the course of employment if the time, place, and circumstances of the injury are employment-related. *E.g., Royall,* 106 Ariz. at 349–50, 476 P.2d at 159–60; *Jayo,* 181 Ariz. at 269, 889 P.2d at 627. The "ultimate test" is whether "the totality of circumstances establishes sufficient indicia of employment connection." *Jayo,* 181 Ariz. at 271, 889 P.2d at 629.

■ In the current case, the administrative law judge addressed only some of the totality of circumstances. He in essence found that claimant had freely chosen to remain on-premises after-hours for a personal purpose. But even assuming *arguendo* that the evidence reasonably supports this finding, we nevertheless conclude that the totality of circumstances compels the conclu-

sion that claimant was injured in the course of his employment.

We have not discovered an Arizona case that is comparable to the current one. Claimant principally relies on *Jayo* and on *Nicholson v. Industrial Comm'n,* 76 Ariz. 105, 259 P.2d 547 (1953).[1] Both of these cases involved remote work sites and unexpected work stoppages. *See Nicholson,* 76 Ariz. at 107, 259 P.2d at 548; *Jayo,* 181 Ariz. at 268–69, 889 P.2d at 626–27. Consequently, although the employees were off-work and technically free to go, their most reasonable alternative was to remain at or near the work site.

In contrast, claimant worked in Phoenix and had completed his normal shift. He chose to use the break room before leaving, but other night-shift employees admittedly chose to go directly home. The circumstances of claimant's employment did not make one choice more reasonable than the other.

Although no prior Arizona case has involved a similarly unforced choice, Larson does address this type of case. The test, according to Larson, is not whether a worker voluntarily remained on the employer's premises after-hours, but whether he acted reasonably. *See* 1A Larson, *supra* §§ 21.60(a)-(c). Larson explains that

> [t]here are at least four situations in which the course of employment goes beyond an employee's fixed hours of work: the time spent going and coming on the premises; an interval before working hours while waiting to begin or making preparations, and a similar interval after hours; regular unpaid rest periods taken on the premises, and unpaid lunch hours on the premises. A definite pattern can be discerned here. In each instance the time, although strictly outside the fixed working hours, is closely contiguous to them; the activity to which that time is devoted is related to the employment, whether it takes the form of going or coming, preparing for work, or ministering to personal

---

1. Claimant also cites *Delgado v. Industrial Comm'n,* 183 Ariz. 129, 901 P.2d 1159 (App. 1994). This case involved both a remote work site and an injury that occurred during the claimant's hours of employment. *Id.* at 130, 901 P.2d at 1160.

necessities such as food and rest; and, above all, the employee is within the spatial limits of his employment.

It has already been observed several times that the "premises" limitation is to some extent arbitrary and artificial, but, since some limitation is unavoidable, it is perhaps as good as any that can be devised. It can be defended in part on a sort of presumption that *as long as the employee is on the premises he is subject to all the environmental hazards associated with the employment,* and also that, *although he may be free to go elsewhere* during the interval, *he is in some degree subject to the control of the employer if he actually chooses to remain on the premises,* merely by virtue of being present on the employer's property.

*Id.* § 21.21(a), at 5–11 to 5–12 (emphasis added) (footnotes omitted).[2]

Cases from other states apply this analysis. *See, e.g., Briley v. Farm Fresh, Inc.,* 240 Va. 194, 396 S.E.2d 835, 836–37 (1990) (barring civil suit by grocery store employee who, after clocking out but before leaving the store, slipped and fell while shopping for groceries); *Jones v. Bendix Corp.,* 407 S.W.2d 650, 652–53 (Mo.Ct.App.1966) (affirming compensability of workers' compensation claim by employee who slipped and fell in employer's cafeteria ten to fifteen minutes before shift began); *Carter v. Volunteer Apparel, Inc.,* 833 S.W.2d 492, 494–96 (Tenn. 1992) (reversing chancellor's finding that workers' compensation claim by employee who slipped and fell in break room about forty minutes before shift began was noncompensable). No case that we have discovered has rejected this analysis.

To support its position, Transamerica principally relies on *Gaumer v. Industrial Comm'n,* 94 Ariz. 195, 382 P.2d 673 (1963). In *Gaumer,* the worker was, among other things, a pilot for the employer. *Id.* at 197,

382 P.2d at 674. An unrelated owner of an historic plane sold it to a third party, and the worker agreed to deliver the plane on his own time in about a week. *Id.* His only incentive was his interest in flying this type of plane. *Id.* A few days later, during a lunch break, the worker attempted to test-fly the plane and fatally crashed. *Id.*

*Gaumer* is readily distinguishable from the current case. The injury occurred off the employer's premises. The worker was pursuing a private avocation. The deviation from work was substantial. Finally, the injury arose solely out of this private and substantial deviation.

■ We are persuaded by Larson's analysis of after-hours injury cases. Notwithstanding a worker's unforced choice to stay on-premises after-hours, if that choice and the ensuing conduct were reasonable under the totality of circumstances, the worker remained in the course of employment.

Applying this analysis to the current case, we conclude that the totality of circumstances compels the conclusion that claimant acted reasonably. Understandably, he chose to remain at ABCO because he was tired and hungry after finishing his shift, a rest area and refreshments were conveniently available at ABCO, and ABCO allowed its employees to use the break room after-hours and even occasionally used this time to discuss work with them there. Claimant used the break room for its intended purpose. The fifteen minute duration between the end of the night-shift and the time of injury was reasonable.

## C. Quantum Of Work–Connection

■ Although the totality of circumstances establishes sufficient indicia of employment-connection, we recognize that this case weakly satisfies the course of employment element. As noted above, however, this case

**2.** The same test and rationale apply to an injury during an unpaid lunch hour. Even if an employee may freely choose to eat on or off the employer's premises, the employee remains in

the course of employment when he or she chooses to stay on-premises. 1A Larson, *supra* § 21.21(a), at 5–6.

strongly satisfies the arising out of employment element because only ABCO employees were exposed to a risk originating in ABCO's business use of its premises. The combined weight of these elements clearly satisfies the standard for compensability. *See, e.g.,* 1A Larson, *supra* § 29.10, at 5–478; *Arizona Workers' Compensation Handbook* § 3.2.1, at 3–10.

## CONCLUSION

For these reasons, we set aside the award and decision upon review denying compensation.

McGREGOR, C.J., and KLEINSCHMIDT, J., concur.