977 P.2d 821

**Rhonda WILLIAMS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Wal–Mart, Respondent Employer,**

**AIG Claims Services, Respondent Carrier.**

**No. 1 CA–IC 97–0141.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 22, 1998.

As Corrected Oct. 23, 1998.

Review Denied May 25, 1999.

Taylor & Associates, P.L.L.C. by Barbara J. Callaway, Prescott, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Long, Lundmark & Poppe, P.A. by James B. Long, Phoenix, for Respondent Employer and Respondent Carrier.

## OPINION

KLEINSCHMIDT, Judge.

¶1 Rhonda Williams was a sales person for Wal–Mart, working a late shift at its store in Prescott. At about 9:00 p.m. on an evening in November 1996, she decided to take her lunch break at a McDonald's restaurant that was located in the store. Immediately after entering McDonald's, Williams slipped on an unmarked wet spot on the floor and injured herself.

¶2 Williams filed a workers' compensation claim against Wal–Mart and its carrier. The carrier denied the claim and Williams requested a hearing. The Administrative Law Judge ("ALJ") issued an award denying compensability. He concluded that the injury did not arise out of Williams' employment, following the rule enunciated in *Pauley v. Industrial Comm'n*, 109 Ariz. 298, 301–02, 508 P.2d 1160, 1163–64 (1973), in which the supreme court said that an injury which occurs during an employee's break period in an area that is not on the employer's premises or under the employer's control occurs outside the course of employment.

## FACTS

■ ¶3 Wal–Mart and McDonald's entered into an agreement under which Wal–Mart agreed to "license" space to McDonald's to allow McDonald's to operate a restaurant inside a Wal–Mart store. In exchange, McDonald's paid a license fee based on a percentage of gross sales. It also paid all taxes related to the operation of the restaurant, except real estate taxes, and paid a fixed reimbursement fee for utilities provided by Wal–Mart.

¶4 Among other things, the agreement provided that the restaurant could operate only while Wal–Mart was open for business, unless McDonald's got consent from Wal–Mart to operate on a different schedule. Wal–Mart had the right to enter the licensed premises at any time for any lawful purpose and had the right to terminate the agreement if McDonald's failed to abide by its terms and conditions. McDonald's had sole control of the restaurant management and employees and was responsible for cleaning and maintaining the licensed premises. It is undisputed that a McDonald's employee was responsible for the hazardous condition of the floor that caused Williams' injury.

¶5 The restaurant was set off from the store by partial walls, a colored stripe on the floor, and the trademark golden arches at the entrance. Wal–Mart's manager described McDonald's as both a lessee and a licensee. He initially testified that he regarded the restaurant as part of the Wal–Mart premises. He then explained that it is not part of the Wal–Mart premises for the purpose of selling Wal–Mart merchandise, but added that Wal–Mart classified the restaurant as "Division One Merchandise," although what he meant by this was never explained. Four other licensees were operating under their own names in the same store.

¶6 The manager confirmed that Wal–Mart and McDonald's advertise together, that McDonald's used the Wal–Mart public address system to solicit business, and that Wal–Mart and McDonald's cooperated to re-

solve any problems concerning their "joint use" of the premises. He also acknowledged that Wal–Mart performed some after-hours maintenance in the McDonald's restaurant, including buffing floors and changing light bulbs. He emphasized, however, that Mc-Donald's alone controlled maintenance in the restaurant during business hours.

¶ 7 Williams was free to leave or to remain in the Wal–Mart store during her meal break. Her options included going to at least two other restaurants in the mall where Wal–Mart was located or using an on-premises break room where she could eat food brought from home. Wal–Mart did not encourage its employees to eat at McDonald's although many employees did so, and Wal-Mart supervisors regularly used McDonald's for meetings with employees. Although Williams seldom went to McDonald's to eat, she did so on this occasion because she did not want to go outside in the dark.

### THE CLAIMANT WAS NOT INJURED ON HER EMPLOYER'S PREMISES

¶ 8 Williams argues that her injury arose in the course of her employment because it occurred on Wal–Mart's premises, while she was performing an activity that inured to Wal–Mart's benefit, and was an inherent part of her employment. Weighing the totality of the circumstances, the most salient consideration in resolving this case is whether the injury occurred on the employer's premises. The carrier concedes that if it did, the claim would be compensable under *Pauley,* 109 Ariz. at 298, 508 P.2d at 1160. *See also* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 15.00 (1998); 2 *id.* at § 21.21.

¶ 9 The carrier characterizes the agreement between Wal–Mart and McDonald's as a lease, the hallmark of which is the right of exclusive possession of the leased property. *See, e.g., Tanner Cos. v. Arizona State Land Dep't,* 142 Ariz. 183, 193, 688 P.2d 1075, 1085 (App.1984). On the other hand, a license is "authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land." *Id.* The record does not disclose, and we will not speculate upon, why Wal-Mart and McDonald's chose to characterize

their arrangement as a license. There is no distinction between a lease and a license, however, that has any particular significance for this case.

¶ 10 In the context of this case, it is control that determines upon whose "premises" the injury occurred. McDonald's and not Wal–Mart controlled the place where, and the agency by which, the Claimant was injured, and the injury occurred while the Claimant was on her own time. In reaching this conclusion we have not lost sight of the fact that Wal–Mart could terminate the agreement if McDonald's violated its conditions. Williams does not argue that this right has any significance to the premises issue, and we find this right to terminate too indirect to constitute any meaningful control of the day-to-day maintenance of the restaurant.

¶ 11 *Pauley* is the Arizona case that articulates the significance of the control of the place where the injury occurred. In *Pauley,* the claimant was a carnival worker who was on a work break and was injured when she was crossing a ditch in an effort to reach an ice cream truck located on a lot adjacent to the premises occupied by the carnival. 109 Ariz. at 300, 508 P.2d at 1162. There was no evidence that the injury occurred on the property being used by the carnival. As to the question of compensability of an injury to an employee who is on a work break, the court denied compensability, saying, "[B]ut we think workmen's compensation should not be expanded to injuries sustained while off the employer's premises, when the hazards encountered are not peculiarly within the *employer's control.*" *Id.* (emphasis added.)

¶ 12 A number of other jurisdictions agree with *Pauley* in recognizing that compensability turns on whether the employer controls the place where the injury occurs. *See State ex rel. Jones Constr. Co. v. Sanders,* 875 S.W.2d 154 (Mo.Ct.App.1994) (injury compensable only because employer owned and used site upon which employee's injury occurred); *Frisbie v. Department of I.L.H.R.,* 45 Wis.2d 80, 172 N.W.2d 346 (Wis. 1969) (no compensability because employer did not exercise full dominion and control over public sidewalk); *Inland Mfg. Div. v.*

*Lawson,* 15 Ohio App.2d 192, 240 N.E.2d 100 (Ohio Ct.App.1967) (injury compensable because employer controlled maintenance and operation of cafeteria); *Hesselman v. Somerset Community Hosp.,* 203 Pa.Super. 313, 201 A.2d 302 (Pa.Super.1964) (injury compensable only because, although employer did not own alley, it used and maintained it for access to laundry building); *Long v. Stewart,* 335 S.W.2d 953 (Ky.1960) (injury compensable notwithstanding employer's claim that it had abandoned premises under construction to contractor only because employer maintained control of the area that employees used when going to and from work).

¶ 13   The Claimant relies on three cases, *P.B. Bell & Assoc. v. Industrial Comm'n,* 142 Ariz. 501, 690 P.2d 802 (App.1984); *Hansen v. Industrial Comm'n,* 141 Ariz. 190, 685 P.2d 1342 (App.1984); and *Jayo v. Industrial Comm'n,* 181 Ariz. 267, 889 P.2d 625 (App. 1995), to support her contention that a location can be part of the employer's premises even when the employer has no control over the area in question. We do not believe any of them applies. In *P.B. Bell,* the claimant left her employer's premises and was walking toward a parking lot where her employer leased parking space for employees when she slipped and fell, injuring herself. We held that the injury was compensable even though the employer did not "control" the parking area. The decision is based on *Knoop v. Industrial Comm'n,* 121 Ariz. 293, 589 P.2d 1325 (App.1978), in which the claimant was injured while crossing a public street to go from her work site to her employer's parking lot where she was required to park. Like the court in *P.B. Bell,* the *Knoop* court applied the "two premises rule," holding that the employer's orders to use the parking lot subjected the claimant to the risk involved in crossing the public street. In contrast, in the case now before us, nothing that Wal-Mart did subjected the Claimant to any risk of falling on a wet floor in a restaurant she was not required to patronize.

¶ 14   In the *Hansen* case, the claimant, an actress, suffered a knee injury when she slipped and fell in the lounge of a motel where her employer had sent her to act in a play. Although her employer had no control over the motel lounge, we held that the injury was compensable because it fell within the expanded exception to the going and coming rule:

> Hansen's [the employer's] second and more difficult contention is that the injury was not suffered in the course of [the claimant's] employment: the positional nexus was not met, essentially because she had not arrived at her workplace. Hansen argued to this Court that [the claimant] must have actually arrived on the doorsill of the dressing room before her workers' compensation coverage would begin for the evening. He draws this conclusion because he does not "control" any portion of Ramada Inn's physical business premises other than the dressing room and stage area. As we concluded above, control is not the issue here. Rather, the question to be answered is: was the claimant Foster injured on the employer's physical premises *or if not* was there a "distinct ... causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury ..."?

*Hansen,* 141 Ariz. at 195, 685 P.2d at 1347 (citing 1 Larson, *supra,* § 15.15 at 4–42,–43).

¶ 15   *Hansen* does not apply to the case before us because, in *Hansen,* the claimant had to be at the motel to do her work. Williams was under no such requirement when she went into McDonald's.

¶ 16   In *Jayo,* the claimant was injured when he was playing a game to pass the time during a period of enforced idleness at a remote job site. The focus in the case was on the nature of the activity the employee was engaged in and not where the activity took place. It was important to the decision that the work site was so remote that it left the worker with few options as to how to pass the time. We concluded that a reasonable employer would expect that workers who had so few options would engage in such recreational activity while waiting to go back to work. This does not equate with an employee who had a variety of options as to how to spend her break and who was injured because of the negligence of a third party.

¶ 17   Williams also argues that the site of the injury is "not properly the sole determining factor in deciding whether an

injury arose in the course of employment." She says that another factor to consider is whether she was benefitting her employer by taking her lunch break at McDonald's. She argues that she did benefit her employer because Wal–Mart derived income from McDonald's sales. She cites no authority for this argument, and we reject it. Purchasing food at McDonald's is not the kind of benefit to Wal–Mart that is relevant to this inquiry. The relevant benefit is a benefit that relates to the job for which Williams was hired. Williams also argues that Wal–Mart benefitted from her eating at McDonald's because she was close by should her employer unexpectedly need her. This, however, was not something the employer cared about. As far as the employer was concerned, Williams could go anywhere she wanted over her lunch hour, and she had a number of options in that respect.

¶ 18 Another factor for consideration, Williams argues, is that the injury occurred as the result of an activity that was an inherent part of the conditions of employment with Wal–Mart. Such is the case, she says, because her employer sometimes held meetings between supervisors and employees in McDonald's, and it fostered the use of McDonald's by its employees by occasionally offering special food prices to its employees. Since Williams was not injured on the occasion of such a meeting and because there is no contention that Williams chose McDonald's on this occasion because of a price special, these arguments carry little weight.

¶ 19 Finally, she argues, the proximity of the McDonald's to her workplace increased the risk of injury because it increased the likelihood that she would choose to eat there. The first answer to this is that the record shows that regardless of proximity, Williams rarely ate at McDonald's. That aside, if her argument were correct, an employee on break who was injured in any restaurant near an employer's place of business would be within the course of employment. No case so holds.

¶ 20 In summary, the two overriding factors are that Williams was on her own time and in a location over which her employer exercised no control when the injury occurred. The award is affirmed.

PHILIP E. TOCI, Judge, concurs.

NOYES, Judge, Dissenting,

¶ 21 McDonald's was on the Wal–Mart premises as a licensee, Petitioner was on the Wal–Mart premises as an employee, and Petitioner was injured while having lunch at McDonald's. This case should be decided by the "premises" rule, and if it is so decided, Petitioner is entitled to workers' compensation benefits.

¶ 22 McDonald's was one of five licensees doing business inside this Wal–Mart. To decide the case the way the majority has done it is to divide the Wal–Mart floor into "control" and "no control" zones, with Wal–Mart employees being covered by workers' compensation if they are injured in this zone but not covered if they are injured in that zone. This sort of department-store Balkanization will produce arbitrary results, and much litigation.

¶ 23 The majority agrees that Petitioner's injury would be compensable if it occurred on the Wal–Mart premises, but the majority decides that this was an off-premises injury. In my opinion, that decision is based on two errors. First, the majority errs by disregarding the distinction between a lease and a license. When the majority asserts, at ¶ 9, "There is no distinction between a lease and a license, however, that has any particular significance to this case," the majority decides the case by summarily rejecting the significance of the legal relationship these giant corporations carefully crafted for themselves. I think that any resolution of this case should recognize the legal significance of the fact that McDonald's was a licensee on the Wal–Mart premises. This means that Petitioner was injured on the Wal–Mart premises, for a licensee has no interest in the licensor's premises.

¶ 24 The majority errs again, in my opinion, by using a "control" test to decide that Petitioner was injured while off the Wal–Mart premises. As the case relied upon by the majority makes clear, the "control" test is applied when deciding whether "injuries

sustained while off the employer's premises" are covered by workers' compensation. *Pauley*, 109 Ariz. at 302, 508 P.2d at 1164. The "control" test does not determine whether an injury was on or off the employer's premises; it determines whether some off-premises injuries are covered by workers' compensation. If we recognize that McDonald's was a licensee on the Wal–Mart premises, we never get to the "control" issue, and we necessarily conclude that Petitioner was injured on the Wal–Mart premises.

¶ 25 Respondents argue that, because Wal–Mart's business is retail sales, its premises does not include a restaurant. I disagree. Wal–Mart was not in the restaurant business, but it decided to use part of its premises as a restaurant through its license with McDonald's.

¶ 26 Although the case is not an easy one to decide, I think it is best decided by recognizing that, because McDonald's was a licensee on the Wal–Mart premises, Petitioner was injured on the Wal–Mart premises—which means that Petitioner is entitled to workers' compensation benefits.